JOURNAL ENTRY AND OPINION
Defendant-appellant, Glen Wilson, appeals the judgment of the Cuyahoga County Common Pleas Court finding him guilty after a jury trial of felonious assault in violation of R.C. 2903.11. Appellant contends that there was insufficient evidence to support his conviction. We disagree and affirm.
On October 5, 1998, the Cuyahoga County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C. 2903.11. The matter proceeded to jury trial on August 9, 1999.
The state presented seven witnesses at trial. Carla Council, a twenty-three-year-old college student, testified that she and a male friend arrived in the Flats at approximately 10:30 p.m. on August 20, 1998. They went to several bars where Council had approximately five mixed drinks. In the early morning hours of August 21, 1998, Council became separated from her friend. Realizing that she did not have any money, her house key or a way to get home, Council became upset and began crying. Council testified that as she walked up the street toward where her friend had earlier parked the car, openly weeping, she encountered two men who said something to her. Council testified that although she cannot remember the comment they made to her, she knows it made her angry and upset. Council's next recollection of that evening is sitting on a curb, using a cell phone borrowed from a passerby to tell her parents that she was going to the emergency room. According to Council, she has no recollection of anyone hitting her.
Council testified that as she sat on the curb, her face was throbbing and her head hurt. She was taken by ambulance to St. Vincent Charity Hospital, where she was treated in the emergency room. X-rays and a CAT scan were taken. Council's medical records of her treatment, which were admitted into evidence, indicate that Council lost consciousness after she was hit. She was diagnosed with closed head injury; left maxillary sinus polyp and left periorbital ecchymosis and hematoma, and released after approximately three to four hours with a prescription for 600 milligrams of Motrin three times a day and instructions to consult with her ophthalmologist that day.
Council testified that as a result of her injury, her left eye was red, green, swollen completely shut, and her face was bruised from [her] eye bone down to [her] jawbone. She testified further that her whole eye was just black and she had blood in her eye for six months after the injury. Her eye also remained sensitive to touch for at least six months. Council testified that she consulted with a physician some time after the injury because her cheekbone was still sensitive and she had a tickle behind her left eye that made her uncomfortable. Council testified further that her ophthalmologist told her that she may have problems with her retina later in life as a result of the injury. On cross-examination, Council admitted that she did not miss any days of school as a result of the injury and did not suffer any broken bones.
John Owen, the general manager of the Have A Nice Day Cafe, a nightclub located on the east bank of the Flats, testified that he and Scott Shirk, a deejay at the nightclub, were standing outside the club at approximately 2:30 a.m. on August 21, 1998. According to Owen, he and Shirk observed a young woman, later identified as Carla Council, walking down the street by herself. Owen testified that he saw three males walk past Council and overheard one of them comment to her, How would you like a dick in your ass? Owen testified that Council appeared upset by the comment and it looked like she was talking back to these individuals. Owen testified that he could tell from the volume of the conversation that things were getting heated, and the next thing we saw is a gentleman strike a girl in the face, and see her hit her head on the cement. According to Owen, in his capacity as a manager of a nightclub, he had observed other bar fights, but this punch was one of the most gruesome things [he had] seen.
Owen observed the three men run down the road and behind Sammy's Restaurant. He found a police officer, explained what he had seen and got in a squad car with the officer to look for the males. As they turned into the parking lot of Sammy's Restaurant, they observed the three males getting into a pickup truck. The officer put all three males into the car and brought them back to Have A Nice Day Cafe, where Owen identified appellant as the assailant. Owen similarly identified appellant in court as the assailant.
Scott Shirk testified that he and Owen were standing outside the Have A Nice Day Cafe at 2:30 a.m. on August 21, 1998. According to Shirk, as several males walked past him and Owen, Shirk overheard one of the males make a vulgar remark. He then observed Ms. Council run up to the males and follow them, flailing her arms and yelling, Don't talk like that to me. Shirk testified that he looked away but then heard the punch, and heard her head hit the sidewalk, and then saw the men run away. Shirk testified that he immediately ran over to Ms. Council and actually witnessed her eye fill up — swell up, right in front of me. Shirk stayed with Council, who was laying on the concrete, crying and mumbling, for approximately five minutes, until a taxi-cab driver picked her up, put her in his cab and drove her to several police officers on Main Street. Shirk did not know if Council was unconscious during this time but testified that she was completely distraught. She didn't have a clue where she was * * * .
Shirk then found a police officer, explained what had happened and got a squad zone car with the officer to drive through the Flats and look for the males. Shirk and the officer were unable to find the males. Later, back in front of the Have a Nice Day Cafe, Shirk identified appellant as the assailant.
Michael Betley, a City of Cleveland police officer, testified that he was on routine patrol in the Flats the morning of August 21, 1998 when he was flagged down by an individual who reported that a woman had just been assaulted. He and the individual rode through the Flats looking for the assailant but were unable to locate him. When Betley dropped the individual off at the Have A Nice Day Cafe, he was informed that the victim had been taken to St. Vincent Charity Hospital and Betley went there to take pictures of the victim. Betley identified State's Exhibits 2 and 3, which were admitted into evidence, as the photographs that he took of Council at the hospital.
Charles Niedbalson, a City of Cleveland police officer, testified that he and his partner were responding to a disturbance in the Flats in the early morning hours of August 21, 1998 when a male came running over to report that a woman had been punched and the men who did it were running away. Niedbalson, his partner and the male got in his zone car and drove through the Flats, looking for the assailants. As they pulled into the parking lot of Sammy's Restaurant, they observed three males getting into a pickup truck. Niedbalson testified that Owen identified appellant as the assailant. Niedbalson placed two of the three males in the backseat of the zone car and transported them to Have A Nice Day Cafe, where Shirk also identified appellant as the assailant. Niedbalson then placed appellant under arrest. Niedbalson subsequently visited Council in the emergency room at the hospital. He testified that her left eye was badly bruised and swollen; probably the worst I've ever seen in an eye.
Dale Moran, a detective with the City of Cleveland Police Department, testified that he investigated the case, took statements from Council and Shirk and then met with a prosecutor regarding the case.
Eric Gehrke testified that he went to the Flats with appellant and Scott Bolek on August 20, 1998. They arrived at the Basement at approximately 11:30 p.m. and stayed until approximately 2:00 a.m. When Gehrke, appellant and Bolek came out of the bar, they saw a fight on the street. According to Gehrke, appellant and Bolek stopped to watch the fight, but he ran to the pickup truck. Gehrke testified that a short while later appellant and Bolek came to the parking lot, but as they were all getting into the pickup truck, a police car pulled behind them and blocked their exit. The police put him, appellant and Bolek in their back of a squad car and took them to Have A Nice Day Cafe. Gehrke and Bolek were eventually released, walked back to the pickup truck and went home.
Gehrke testified that he never asked Bolek what happened. According to Gehrke, appellant visited him at his home on the day he was released from jail and asked him if Bolek had hit Council. Gehrke testified that appellant then told him that he did not know how Council had been hit; appellant remembered only that someone had punched him in the back and he had reacted by turning around and trying to get the person off his back.
At the close of the state's case, the trial court denied appellant's Crim.R. 29 motion for acquittal. Appellant then presented the testimony of Gina Morgan, appellant's girlfriend. Morgan testified that she gave appellant a backrub before he went to the Flats on August 20, 1998 and did not notice any bruises on his back. When appellant was changing his shirt at his apartment on the day he was released from jail, however, Morgan noticed a pear-shaped bruise and red patches on the upper part of his back.
Appellant testified that on August 20 1998, he, Eric Gehrke and Scott Bolek went to the Basement, a bar in the Flats, at approximately 11:30 p. m. They stayed there until the club closed at 2:30 a.m. the following morning.
According to appellant, he got separated from his friends as they walked back to their car because there was a big fight on the street near the Have A Nice Day Cafe. As the fight started to disperse, appellant observed Gehrke leave and walk up the street to the car. He then saw Bolek talking to some women in a car in front of the cafe. Appellant testified that he jogged over to Bolek as Bolek walked away from the car and then heard Bolek make a rude comment to a young woman. Appellant testified that he kept walking with Bolek, but the young woman became angry at the comment. According to appellant, the woman came up to Bolek, called him names and told him he should not talk to women like that. Appellant testified that when Bolek cursed back at the woman, he grabbed Bolek and tried to pull him toward the truck. According to appellant, the woman then started shoving Bolek, so appellant tried to get between them. When he and Bolek started to walk away, the woman tried to push Bolek again, but pushed appellant instead. Appellant testified that as he and Bolek walked away again, he suddenly felt someone punching him on his back. According to appellant, his first response was to shrug his shoulders and spin around as quickly as he could. Bolek lunged forward to help him. Appellant testified that he then looked and saw the young woman on the ground, but does not know what hit her.
The jury returned a verdict of guilty of felonious assault. The trial court subsequently sentenced appellant to two years of incarceration in the Lorain Correctional Institution. Appellant timely appealed, assigning one error for our review:
 I. GLEN WILSON WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION FOR FELONIOUS ASSAULT, AS IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
Appellant contends that he was denied due process of law because his conviction was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt of every element of the offense of felonious assault.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Id. at 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In essence, therefore, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra, at 386.
R.C. 2903.11 defines the offense of felonious assault: No person shall knowingly cause serious physical harm to another * * * * . R.C.2901.01(A)(5) defines serious physical harm :
 Serious physical harm to persons means any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
According to appellant, Council suffered no broken bones or fractures. She had no permanent vision loss and within four days of the injury, went to school and work. She was only in the hospital for three hours and was prescribed nothing more than Motrin for pain. Therefore, appellant contends, Council suffered nothing more than a black eye, which does not amount to serious physical injury under R.C.2901.01(A)(5). We disagree.
Where injuries to the victim are serious enough to cause him or her to seek medical treatment, a jury may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C.2901.01(A)(5). State v. Walker (June 18, 1987), Cuyahoga App. No. 52391, unreported. See also, State v. Grider (Dec. 20, 1995), Cuyahoga App. No. 68594, unreported; State v. Huckabee (Oct. 26, 1995), Cuyahoga App. No. 67588, unreported; State v. Rushing (Sept. 30, 1993), Cuyahoga App. No. 62688, unreported; State v. Williams (Nov. 10, 1983), Cuyahoga App. No. 46599, unreported.
Here, the state's witnesses at trial testified that they saw appellant punch Council and then saw her head hit the ground. The victim, Carla Council, testified that as a result of her injury, she was taken by ambulance to St. Vincent Charity Hospital, where she was examined and treated for the injuries to her face and eye. Therefore, the jury could reasonably infer from the fact that she sought medical treatment, that Council's injuries were serious, and the force used caused serious physical harm. Huckabee, supra.
Moreover, even without inferring that Council suffered serious physical harm from the fact that she sought medical treatment, Council's testimony and the testimony of the state's other witnesses, if believed, was sufficient to convince a rational trier of fact that Council suffered serious physical harm as defined in R.C. 2901.01(A)(5) (c), (d) and (e). Owen testified that the punch was one of the most gruesome things I've seen. Officer Niedbalson testified that Council's eye was badly bruised and swollen and, in fact, that it was probably the worst I've even seen in an eye. Shirk testified that as Council lay on the curb, crying and mumbling, she was completely distraught and did not know where she was.
Council's medical records, which were admitted into evidence, indicated that she lost consciousness after she was hit. The records indicate further that as a result of the punch, she sustained a closed head injury, a sinus polyp, ruptured blood vessels and a hematoma. Further, Council testified that she had blood in her eye and her eye remained sensitive to touch for six months after the injury. She also testified that her ophthalmologist informed her that she may have problems with her retina later in life as a result of the injury.
On this evidence, a reasonable trier of fact could have concluded that Council sustained temporary, substantial incapacity (R.C.2901.01(A)(5)(c)), temporary, serious disfigurement (R.C.2901.01(A)(5)(d)), or substantial suffering (R.C. 2901.01(A)(5)(e)). In short, there was sufficient evidence for a reasonable factfinder to find that Council suffered serious physical harm.
Appellant contends, however, that even if there were sufficient evidence to demonstrate that Council suffered serious physical harm, the evidence did not support a conviction for felonious assault because the evidence established that Ms. Council provoked appellant. Therefore, appellant contends, he should have been convicted of aggravated assault, pursuant to R.C. 2903.12, 1 rather than felonious assault.
Aggravated assault is not a lesser included offense of felonious assault, but is an inferior degree of felonious assault with a reduction in penalty upon the determination by the trier of fact of the existence of the mitigating circumstance of serious provocation. State v. Carter (1985), 23 Ohio App.3d 27, 32. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. State v. Deem (1988), 40 Ohio St.3d 205.
Here, appellant did not present sufficient evidence of serious provocation to allow the trier of fact to find him guilty of aggravated assault. Appellant testified that after Bolek made the vulgar comment to Council, she came up to Bolek, called him names and told him he should not speak to women like that. He testified further that when he grabbed Bolek and tried to pull him toward the truck, Council shoved Bolek. Appellant also testified that as he and Bolek were walking away, he felt someone punching him on his back. These alleged actions by the victim were not sufficient, however, to incite or arouse appellant into using deadly force. Under any reasonable view of this evidence, the evidence was insufficient for the trier of fact to find appellant guilty of aggravated assault.
Appellant's assignment of error is therefore overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 ______________________________ JAMES D. SWEENEY, JUDGE
DIANE KARPINSKI, P.J., and LEO M. SPELLACY, J., CONCUR.